1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10   YENDERINA TISCARENO,

11           Plaintiff,              No. CIV S-05-2363 PAN (JFM)

12       vs.

13   JO ANNE B. BARNHART,
14   Commissioner of Social Security,

15           Defendant.              ORDER

16   _____/

17           This case is before the undersigned pursuant to 28 U.S.C. § 636(c)(consent to

18   proceed before a magistrate judge).  Plaintiff seeks judicial review of a final decision of the

19   Commissioner of Social Security ("Commissioner") denying an application for Disability Income

20   Benefits ("DIB") under Title II of the Social Security Act ("Act").  For the reasons discussed

21   below, the court will deny Plaintiff's motion for summary judgment or remand and grant the

22   Commissioner's cross-motion for summary judgment.

23   /////

24   /////

25   /////

26

1  I.  Factual and Procedural Background

2         In a decision dated July 29, 2005, the ALJ determined Plaintiff was not disabled.[1]

3  The ALJ's decision became the final decision of the Commissioner when the Appeals Council

4  denied Plaintiff's request for review.  The ALJ found Plaintiff has severe impairments of type II

5  diabetes mellitus and depression, but that these impairments do not meet or medically equal a

6  listed impairment; Plaintiff has the residual functional capacity to lift and carry 50 pounds

7  occasionally and 25 pounds frequently; Plaintiff can sit, stand, and walk for six hours in an eight

8  hour day; Plaintiff cannot communicate in English; Plaintiff can perform simple, repetitive tasks;

9  Plaintiff has the residual functional capacity to perform a significant range of medium work; a

10  ────────────────

11         [1] Disability Insurance Benefits are paid to disabled persons who have contributed to the
Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income ("SSI") is paid
12  to disabled persons with low income. 42 U.S.C. § 1382 et seq.  Under both provisions, disability
is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a
13  medically determinable physical or mental impairment."  42 U.S.C. §§ 423(d)(1)(a) &
1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  See 20 C.F.R.
14  §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The
following summarizes the sequential evaluation:
15
       Step one:  Is the claimant engaging in substantial gainful
16  activity?  If so, the claimant is found not disabled.  If not, proceed
to step two.
17         Step two:  Does the claimant have a "severe" impairment?
If so, proceed to step three.  If not, then a finding of not disabled is
18  appropriate.
       Step three:  Does the claimant's impairment or combination
19  of impairments meet or equal an impairment listed in 20 C.F.R., Pt.
404, Subpt. P, App.1?  If so, the claimant is automatically
20  determined disabled.  If not, proceed to step four.
       Step four:  Is the claimant capable of performing his past
21  work?  If so, the claimant is not disabled.  If not, proceed to step
five.
22         Step five:  Does the claimant have the residual functional
capacity to perform any other work?  If so, the claimant is not
23  disabled.  If not, the claimant is disabled.  ────────────────

24  Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

25         The claimant bears the burden of proof in the first four steps of the sequential evaluation
process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential
26  evaluation process proceeds to step five.  Id.

2

1  significant number of jobs exist in the national economy that Plaintiff can perform, including

2  sewing machine operator, hand packer, and assembler; and Plaintiff is not disabled.

3  Administrative Transcript ("AT") 24-25.

4          Plaintiff contends that the ALJ committed numerous errors.  First, Plaintiff argues

5  that the ALJ failed to properly weigh the medical evidence from Plaintiff's treating physician.

6  Second, Plaintiff states that the ALJ failed to evaluate all of the nonexertional limitations

7  contained in the record.  Third, Plaintiff contends that the ALJ failed to properly consider

8  testimony from the vocational expert.  Finally, Plaintiff argues that the ALJ's conclusion are

9  inconsistent with his own findings.

10  II.  Standard of Review

11          The court reviews the Commissioner's decision to determine whether (1) it is

12  based on proper legal standards under 42 U.S.C. § 405(g), and (2) substantial evidence in the

13  record as a whole supports it.  Copeland v. Bowen, 861 F.2d 536, 538 (9th Cir. 1988) (citing

14  Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 575-76 (9th Cir. 1988)).

15  Substantial evidence means more than a mere scintilla of evidence, but less than a

16  preponderance.  Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996) (citing Sorenson v.

17  Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)).  "It means such relevant evidence as a

18  reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402

19  U.S. 389, 402, 91 S. Ct. 1420 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S.

20  197, 229, 59 S. Ct. 206 (1938)).  The record as a whole must be considered, Howard v. Heckler,

21  782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that

22  detracts from the ALJ's conclusion weighed.  See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir.

23  1985).  The court may not affirm the ALJ's decision simply by isolating a specific quantum of

24  supporting evidence.  Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If

25  substantial evidence supports the administrative findings, or if there is conflicting evidence

26  supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see

3

1   Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an

2   improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d

3   1335, 1338 (9th Cir. 1988).

4   III.  Analysis

5          a.  The ALJ Properly Weighed the Medical Opinion of Plaintiff's Treating Physician.

6               The ALJ gave "less weight" to the opinion of Plaintiff's treating physician.  AT

7   20.  Plaintiff's treating physician offered opinions regarding the ailments from which Plaintiff

8   suffered, as well as her functional capacity.  AT 261-284.  In reaching his findings, the ALJ noted

9   that Plaintiff's treating physician's assessment of Plaintiff's residual function was not consistent

10  with the treatment records.  AT 20.  In particular, the ALJ found Plaintiff's doctor to be

11  advocating on her behalf.  Id.  This finding was not in error.

12              The weight given to medical opinions depends in part on whether they are

13  proffered by treating, examining, or non-examining professionals.  Lester v. Chater, 81 F.3d 821,

14  830 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating professional,

15  who has a greater opportunity to know and observe the patient as an individual.  Id.; Smolen v.

16  Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

17              To evaluate whether an ALJ properly rejected a medical opinion, in addition to

18  considering its source, the court considers whether (1) contradictory opinions are in the record;

19  and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a

20  treating or examining medical professional only for "clear and convincing" reasons.  Lester, 81

21  F.3d at 831.  In contrast, a contradicted opinion of a treating or examining professional may be

22  rejected for "specific and legitimate" reasons, that are supported by substantial evidence.  Lester,

23  81 F.3d at 830.  While a treating professional's opinion generally is accorded superior weight, if

24  it is contradicted by a supported examining professional's opinion (e.g., supported by different

25  independent clinical findings), the ALJ may resolve the conflict.  Andrews v. Shalala, 53 F.3d

26  1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  In

1    any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical

2    findings. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir.1999) (treating physician's conclusory,

3    minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751.  The opinion of a

4    non-examining professional, without other evidence, is insufficient to reject the opinion of a

5    treating or examining professional.  Lester, 81 F.3d at 831.

6    　　　　Dr. Almendarez treated Plaintiff for many of her physical complaints starting in

7    October 2002.  AT 230.  During the course of the treatment relationship, Dr. Almendarez

8    diagnosed Plaintiff with type II diabetes mellitus[2] and lipidemia[3].  Id.  Furthermore, Dr.

9    Almendarez stated that Plaintiff suffered from arthritis in her knees.  In addition, he referred

10   Plaintiff to treatment for her depression.  Id.

11   　　　　Plaintiff argues that the ALJ improperly weighed Dr. Almendarez's opinion.

12   (Pl.'s Mot. Summ. J. 4-7).  In making her argument, Plaintiff states that Dr. Almendarez

13   consistently found Plaintiff to suffer from diabetes, degenerative joint disease, hyperlipidemia,

14   and noted her treatment for panic disorder.  Id. at 5.  Plaintiff attacks the basis upon which the

15   ALJ discredits Dr. Almendarez's opinion, noting that Plaintiff's "treatment records are clearly

16   supported by objective test results that document the physician's conclusion that claimant's

17   blood sugar and diabetes [are] not under control."  In making this meritless argument, Plaintiff

18   fails to grasp the true nature of the ALJ's opinion and the basis upon which he rejected Dr.

19   Almendarez's conclusions.

20   　　　　The ALJ clearly found Plaintiff to suffer from the severe impairment of diabetes

21   and depression.  AT 18, 25.  As it concerns these impairments, there is no conflict between the

22

23   　　　[2]Type II diabetes mellitus is also known as adult onset diabetes.  It is a mild form of
24   diabetes that typically appears in adulthood and is exacerbated by obesity and an inactive
     lifestyle.  http://medical-dictionary.thefreedictionary.com/diabetes+mellitus.

25   　　　[3]Lipidemia is also known as hyperlipidemia.  It is an excess of fats, oils, waxes, sterols, or
26   triglycerides that together with carbohydrates and proteins constitute the principal structural
     materials of living cells.  http://medical-dictionary.thefreedictionary.com/hyperlipidemia

1  diagnostic opinion of Dr. Almendarez and the ALJ.  Indeed, in reaching his findings, it is

2  apparent that the ALJ placed great weight in Dr. Almendarez's assessment of Plaintiff's

3  condition, agreeing with Dr. Almendarez that Plaintiff's diabetes and her mental impairments

4  were severe.

5        Where the ALJ refused to credit the full extent of Dr. Almendarez's opinion was

6  in his conclusion about Plaintiff's other physical impairments and his assessment of Plaintiff's

7  functional limitations.  In this aspect of Dr. Almendarez's opinion, the ALJ found a lack of

8  consistency with the treatment records.  The ALJ's interpretation of the evidence was correct.

9  There was no error in the ALJ's decision to give less weight to the opinion of Plaintiff's treating

10  physician.

11        Dr. Almendarez opined that Plaintiff suffered from lipidemia.  In addition, he

12  stated that Plaintiff was capable of lifting and carrying up to 20 pounds occasionally and 10

13  pounds frequently.  AT 231.  While noting that Plaintiff had no impairments in her ability to use

14  her hands and feet, Dr. Almendarez opined that Plaintiff could only frequently perform gross and

15  fine manipulation with her hands.  AT 232.  In this regard, Plaintiff was restricted to frequent

16  reaching, handling, feeling, and pushing and pulling.  AT 233.  As a result of arthirtis in her

17  knees, Dr. Almendarez precluded Plaintiff from all crawling, and restricted her to occasional

18  balancing and kneeling, and frequent stooping and crouching.  Id.  According to Dr. Almendarez,

19  Plaintiff should avoid hazards such as heights, moving machinery, chemicals, dust, extreme

20  temperatures, and fumes.  AT 234.

21        A medical opinion must be well-supported by acceptable clinical or laboratory

22  findings.  20 C.F.R. 404.1527(d)(2).  The absence of clinical findings to support a medical

23  opinion is a legitimate basis upon which to discredit a treating physician's opinion.  See Batson

24  v. Commissioner of Social Security Administration, 359 F.3d 1190, 1195 (9th Cir. 2004)(giving

25  minimal weight to treating physician's opinions when clinical findings are not present).  The ALJ

26  properly found that Dr. Almendarez's treatment records do not contain the quantum of

observations necessary to justify his conclusions about Plaintiff's impairments or her residual

function.

The records of Plaintiff's treatment by Dr. Almendarez contain few complaints or

findings consistent with a finding of severe lipidemia, arthirtis, or any of the functional

restrictions.  Plaintiff was consistently seen to follow up on her poorly controlled or uncontrolled

diabetes mellitus.  AT 114, 116, 124, 130-31, 134-35, 265, 267-73, 277-83.  There is no evidence

Dr. Almendarez considered her lipidemia to be a severe impairment that prevented her from

performing basic work.  There is no apparent mention of arthritis in the medical record.

Given the limited findings, the ALJ's decision to discredit the opinion of Dr.

Almendarez and find that Plaintiff did not suffer from the severe impairments of lipidemia and

arthritis is not in error.  An impairment is not severe only if it "would have no more than a

minimal effect on an individual's ability to work, even if the individual's age, education, or work

experience were specifically considered."  SSR 85-28.  That is clearly the result in this case.  The

medical record provides no evidence that Plaintiff's lipidemia and arthritis prevented her from

performing any of the activities associated with work.  Indeed, Plaintiff rarely complained of any

symptoms consistent with either diagnosis, nor were they of sufficient concern to Dr.

Almendarez that he felt the need to note them in his medical record.  The ALJ's decision to

discount Dr. Almendarez's conclusion that Plaintiff suffered severe lipidemia and arthritis was

not in error.  See Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003); Vincent

v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984).

Dr. Almendarez also determined that Plaintiff had significant functional

limitations.  However, despite some complaints of pain in her hands, AT 122, Dr. Almendarez's

assessment of Plaintiff's fine and gross motor skills is undermined by Plaintiff's more recent

denial of such pain.  AT 283.  Indeed, Plaintiff made few physical complaints related to the

functional impairments cited by Dr. Almendarez, denying any symptoms, AT 124, 128, 134, or

/////

noting only fatigue and foot pain, AT 118, 122, heartburn, AT 280, and burning and difficulty

during urination, AT 273, 282.

Furthermore, many aspects of Dr. Almendarez's opinion are contradicted by other

medical opinions in the record.  The ALJ gave significant weight to the opinion of the examining

physician, Dr. Turkot, to the extent that it was based upon objective findings in her examination.

AT 20.  However, the ALJ refused to rely on all aspects of Dr. Turkot's opinion because her

assessment of Plaintiff's nonexertional limitations was not supported fully by the examination,

medical record, or Plaintiff's daily activities.  Id.  The ALJ's reliance on portions of this one

time examination over the opinion of the treating physician was not in error.  See Magallanes,

881 F.2d at 751; see also Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995)(holding that it

is solely the province of the ALJ to resolve conflicting medical opinions that are based upon

independent clinical findings).

Dr. Turkot saw Plaintiff on November 9, 2003.  AT 225-29.  A board certified

internist, Dr. Turkot diagnosed Plaintiff with diabetes mellitus, depression, hyperlipidemia,

numbness in the toes on both feet, and a trigger finger on the left hand.  AT 229.  As a result of

her examination, Dr. Turkot found Plaintiff capable of standing and walking up to six hours in an

eight hour workday, with no limitations on her ability to sit.  Id.  In contrast to Dr. Almendarez,

Dr. Turkot found Plaintiff capable of lifting 25 pounds frequently and 50 pounds occasionally.

Id.  Dr. Turkot noted a visual limitation that could be controlled with management of Plaintiff's

diabetes, and also warned that Plaintiff should not drive professionally, nor should she work at

heights or in hazardous conditions as a result of her multiple impairments.  Id.

The ALJ's rejection of the opinion of Plaintiff's treating physician is further

supported by the opinion of the State Agency doctor.  The nonexamining physician with the State

Agency reviewed Plaintiff's medical records on November 25, 2003, and agreed with Dr. Turkot

that Plaintiff was capable of lifting 50 pounds occasionally and 25 pounds frequently.  AT 194.

In addition, the State Agency stated that Plaintiff could stand, walk, and sit for six hours in an

eight hour day, and had unlimited abilities to push and pull.  Id.  Furthermore, the State Agency found no limitations on Plaintiff's ability to climb, balance, stoop, kneel, crouch, or crawl.  AT 195.  The only limitation expressed by the State Agency was a requirement that Plaintiff avoid concentrated exposures to hazards like machinery or heights.  AT 197.

The ALJ provided specific and legitimate reasons supported by substantial evidence in the record for discrediting the functional limitations imposed by Plaintiff's treating physician.  As properly discussed by the ALJ, Dr. Almendarez's conclusions regarding the nature and extent of Plaintiff's impairments are not consistent with his treatment records.  Furthermore, many of Dr. Almendarez's opinions regarding Plaintiff's limitations are undermined by other medical opinions in the record.  The ALJ's finding was not in error.

      b.  The ALJ's Evaluation of Plaintiff's Nonexertional Limitations Was in Error.

The ALJ noted many of the exertional and nonexertional limitations that influenced Plaintiff's residual functional capacity.  As a result of these impairments, the ALJ found Plaintiff capable only of performing simple, routine, repetitive tasks.  AT 23.  This finding was in error.

Nonexertional limitations are non-strength related limitations. These include mental, sensory, postural, manipulative, and environmental limitations.  Desrosiers v. Secretary of Health & Human Services, 846 F.2d 573, 579 (9th Cir.1988); 20 C.F.R., Pt. 404, Subpt. P, Appendix 2, § 200.00(e).  The ALJ properly evaluated the mental impairments noted by Plaintiff's treating mental health provider, discounting the opinion because it was not consistent with the physician's own medical records.  AT 22.  This aspect of the ALJ's findings was not in error.

Dr. Fong treated Plaintiff for her mental health issues.  According to Dr. Fong, Plaintiff suffered from numerous mental impairments, including anxiety, depression, insomnia, diminished ability to concentrate, shortness or breath, nausea, accelerated heart beat, and unexpected panic attacks.  AT 235.  As a result, Dr. Fong found that Plaintiff had a poor ability

1  to make most occupational adjustments, performance adjustments, or social adjustments.  AT

2  236-38.

3         The ALJ's refused to rely on Dr. Fong's assessment of Plaintiff's mental,

4  nonexertional impairments.  AT 22.  In reaching this decision, the ALJ noted that Dr. Fong's

5  treatment records do not show symptoms consistent with the extent of Plaintiff's limitations.  Id.

6  Furthermore, the ALJ noted that Plaintiff's condition appeared to improve with treatment and

7  medication.  Id.

8         As they concern Plaintiff's mental impairments, the ALJ's assessment of

9  Plaintiff's nonexertional limitations was not in error.  The ALJ provided a specific and legitimate

10  reasons for refusing to give full weight to Dr. Fong's opinion.  Lester, 81 F.3d at 830.  In addition

11  to his analysis of Dr. Fong's treatment record, the ALJ also noted the contradictory opinions of

12  other medical experts who examined Plaintiff.  AT 21-22.  Dr. Behniwal, to whom the ALJ

13  properly gave significant weight, determined that Plaintiff was capable of performing detailed

14  and complex tasks.  AT 223.  The State Agency found Plaintiff capable of performing unskilled

15  work on a consistent basis, limiting only her contacts with the general public.  AT 217.

16  Substantial evidence supports the ALJ's conclusion that Plaintiff's nonexertional impairments

17  permit her to perform simple, routine, and repetitive tasks.

18         However, as it concerns another nonexertional impairment, the ALJ's conclusion

19  is not supported by substantial evidence.  Every medical expert who evaluated Plaintiff's

20  physical impairments opined that Plaintiff should avoid exposure to hazardous conditions such as

21  heights.  AT 197, 299, 234.  The ALJ's assessment of Plaintiff's residual functional capacity fails

22  to incorporate or adequately discount this consistently documented environmental limitation.  As

23  a result, it cannot be said that substantial evidence supports the ALJ's conclusion.

24         The ALJ discredits each of the medical opinions as they concern this

25  nonexertional limitations.  AT 20.  At each instance, the ALJ states various factors that

26  undermine this aspect of the medical opinion.  Among the reasons cited by the ALJ for failing to

1  credit the full extent of Plaintiff's nonexertional limitations are a lack of objective findings in the

2  record, the examination, or an inconsistency between the finding and Plaintiff's daily activities.

3  AT 20.  However, at no point does the ALJ clearly demonstrate how each of these factors

4  undermines the consistent medical opinion of three physicians.

5          The ALJ limited Plaintiff to simple, routine, and repetitive work.  AT 23.  While

6  not specific in his reasoning, the ALJ appeared to limit Plaintiff to unskilled work.  AT 21.

7  Unskilled work needs little or no judgment to perform simple duties and can generally be learned

8  on the job in 30 days or less.  20 C.F.R. § 404.1568(a).  However, there is nothing inherent in any

9  limitation to unskilled work that precludes exposure to the hazards recognized by each of the

10 doctors who treated or examined Plaintiff, or evaluated her medical record.  Indeed, it is entirely

11 foreseeable that unskilled work might involve significant contact with heights, heavy machinery,

12 or fumes.

13         The ALJ fails to adequately explain how a nonexertional limitation consistently

14 recognized by three independent physicians is not supported by the treatment records.  While the

15 ALJ provided specific and legitimate reasons for discrediting the entire opinion of Plaintiff's

16 treating physician, his basis for discrediting one aspect of that opinion that is supported by two

17 other, independent medical experts is neither clear, nor convincing.  However, as explained more

18 fully below, this error was harmless and remand or an award of benefits is not required.  See

19 Curry v. Sullivan, 925 F.2d 1127, 1129 (9th Cir.1990) (harmless error analysis applicable in

20 judicial review of social security cases).

21         The ALJ ultimately relied upon a hypothetical from the vocational expert (VE)

22 that set out a series of limitations, including Plaintiff's need to avoid exposure to hazards like

23 dust and heights.  AT 302.  According to the VE, the nonexertional impairment had no effect on

24 Plaintiff's ability to perform work in the national economy.  Consequently, the ALJ's failure to

25 accurately capture Plaintiff's nonexertional limitations was harmless as it had no effect on the

26 ultimate finding that Plaintiff was not disabled.

1    c.  The ALJ Properly Utilized the Testimony from the Vocational Expert.

2    The ALJ received testimony at the administrative hearing from a VE.  The VE

3    testified that a person with the same residual functional capacity as Plaintiff, including a

4    preclusion from hazards, was capable of performing work that existed in significant numbers in

5    the national economy.  AT 301, 302.  The ALJ's reliance on this testimony to conclude that

6    Plaintiff was not disabled was not in error.

7    The ALJ found Plaintiff did not have any past relevant work.  AT 25.  Upon a

8    showing that Plaintiff does not have or is unable to perform her past relevant work, the burden

9    shifts to the ALJ to demonstrate that a substantial number of jobs exist in the national economy

10   that Plaintiff is able to perform given her exertional and nonexertional impairments.  Embrey v.

11   Bowen, 849 F.2d 418, 422 (9th Cir. 1988).  In meeting this burden, the ALJ may rely on the

12   medical-vocational guidelines ("the grids") provided they accurately capture all of a plaintiff's

13   limitations.  Jones v. Heckler, 760 F.2d 993, 998 (9th Cir. 1985); see also Heckler v. Campbell,

14   461 U.S. 458, 462 n.5, 103 S. Ct. 1952, 1955 n.5 (1983).  When the grids are not appropriate, the

15   ALJ may pose hypothetical questions to a VE in order to determine if work exists in the national

16   economy for which a plaintiff is qualified.  Cf. Jones v. Heckler, 760 F.2d 993, 998 (9th Cir.

17   1985) (ALJ may apply grids in lieu of taking the testimony of a vocational expert only when the

18   grids accurately and completely describe the claimant's abilities and limitations); see also Polny

19   v. Bowen, 864 F.2d 661, 663-64 (9th Cir. 1988) (where plaintiff unable to perform past work and

20   has significant nonexertional limitations, then testimony of a VE is required to demonstrate the

21   existence of specific jobs that Plaintiff is capable of performing despite these restrictions).

22   Hypothetical questions posed to a VE must set out all of Plaintiff's relevant limitations.  Embrey,

23   849 F.2d at 422.

24   The ALJ determined that Plaintiff had the residual functional capacity to lift and

25   carry 50 pounds occasionally and 25 pounds frequently and could sit, stand, and walk for six

26   hours in an eight hour day.  AT 25.  The ALJ also found that, as a result of Plaintiff's illiteracy

1    and other nonexertional impairments, including mental limitations, Plaintiff could perform

2    simple, repetitive tasks.  AT 22, 25.  As explained above, this finding was in error because of the

3    ALJ's failure to incorporate Plaintiff's preclusion from hazards.

4              Residual functional capacity is what a person "can still do despite [the

5    individual's] limitations." 20 C.F.R. §§ 404.1545(a); see also Valencia v. Heckler, 751 F.2d

6    1082, 1085 (9th Cir. 1985) (residual functional capacity reflects current "physical and mental

7    capabilities").  Multiple medical opinions, including the opinions of Dr. Turkot, Dr. Behniwal,

8    and the physicians associated with the State Agency support the ALJ's conclusions about

9    Plaintiff's abilities.  Those opinions also recognize that Plaintiff is unable to perform hazardous

10   duties.  The ALJ's failed to incorporate this restriction into Plaintiff's residual functional

11   capacity, ultimately concluding that Plaintiff was capable of performing hazardous duties.

12   Although this finding is not supported by substantial evidence in the record, any error in this case

13   was harmless.

14             Based upon his incorrect findings, the ALJ proposed multiple hypothetical

15   questions to the VE.  AT 301-02.  Ultimately, the ALJ relied upon a hypothetical that assumed an

16   individual of Plaintiff's age, with a third grade education who is illiterate in English, able to sit,

17   stand, and walk six hours in an eight hour day, capable of lifting 25 pounds frequently and 50

18   pounds occasionally, and who can perform simple, routine, repetitive tasks.  Id.  Most important

19   to the harmless error analysis, the hypothetical stated that the person must avoid exposure to

20   moving, dangerous machinery or unprotected heights.  Id.  This hypothetical question accurately

21   describes Plaintiff's residual functional capacity by incorporating the abilities found by the ALJ,

22   as well as the significant nonexertional environmental limitation excluded from the ALJ's

23   findings; specifically, Plaintiff's need to avoid exposure to hazards.  The hypothetical contained

24   all relevant limitations.  Reliance on this hypothetical question to conclude that Plaintiff was not

25   disabled was not in error.

26   /////

13

1    The ALJ proposed an additional hypothetical to the VE that contained the

2  limitations noted above, as well as a preclusion from any sort of work requiring public contact

3  and high production quotas.  AT 302.  As a result of this additional requirement, the ALJ found

4  Plaintiff unable to work.  Id.  The ALJ based his finding on Plaintiff's inability to perform

5  unskilled, production jobs.  Id.  According to the VE, Plaintiff's inability to operate at heights or

6  in dusty environments was not implicated by a preclusion to unskilled work.  Id.

7    The ALJ erred in his assessment of Plaintiff's nonexertional limitations.

8  However, this was harmless error as the hypothetical question ultimately relied upon by the ALJ

9  included all relevant limitations, including a preclusion from hazards.  The findings of the ALJ

10  will not be disturbed.

11    d.  The ALJ's Findings Are Consistent with the Evidence in the Record.

12    The ALJ found that Plaintiff experienced moderate deficiencies in concentration,

13  persistence, and pace.  AT 18.  However, as further explained by the ALJ, this impairment did

14  not have any impact on Plaintiff's ability to engage in substantial gainful activity requiring the

15  performance of simple, routine, repetitive tasks.  Id.  This finding is logically consistent and not

16  in error.

17    The ALJ properly evaluated Plaintiff's mental impairments.  While

18  acknowledging Plaintiff's impairment, the ALJ noted Plaintiff's daily activities as evidence that

19  Plaintiff is capable of work.  AT 22.  Furthermore, the ALJ properly weighed the medical

20  opinions to determine that Plaintiff can perform the physical and mental demands of work.  Id.

21  The ALJ's restriction to simple, repetitive tasks is a direct response to the recognized

22  impairments in concentration, persistence, and pace.  There is no inconsistency in the ALJ's

23  conclusions.

24  /////

25  /////

26  /////

14

1         The ALJ's decision is fully supported by substantial evidence in the record and

2  based on the proper legal standards.  Accordingly, IT IS HEREBY ORDERED that:

3         1.  Plaintiff's motion for summary judgment or remand is denied, and

4         2.  The Commissioner's cross-motion for summary judgment is granted.

5  DATED:  October 30, 2006.

6

7                          UNITED STATES MAGISTRATE JUDGE

8

9  13/Tiscareno.ss.wpd

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26